C. E. BULL v. ATLANTA AND CHARLOTTE AIR LINE
RAILWAY COMPANY.

(Filed 16 December, 1908).

1. **Negligence — Contributory    Negligence — Instructions — Verdict,**
   **Facts Established By.**

   When the question of defendant's negligence is dependent
   upon whether the engineer stopped the train in an unusually
   rough or jolting manner, and the court charges the jury to find
   the appropriate issue for defendant if the engineer stopped it
   in the usual or ordinary manner, a verdict in plaintiff's favor
   establishes the defendant's negligence; and, further, when the
   Court charges the jury to answer likewise in defendant's favor
   if the plaintiff did not take all ordinary precautions to pro-
   tect himself against all shocks or jolts, a verdict in plaintiff's
   favor clears him of contributory negligence.

2. **Same—Irrelevant Questions—Harmless Error.**

   When it has been established by the verdict of the jury, that,
   through defendant's negligence, without contributory negligence
   on plaintiff's part, plaintiff was thrown from the top of a car
   and injured, the burden being on plaintiff, his having introduced
   immaterial evidence relating to a defective brake wheel, upon
   which he was thrown, is harmless error, as the questions arising
   therefrom could not affect the result.

ACTION tried before *Moore, J.,* and a jury, April Term,
1908, of MECKLENBURG.   Defendant appealed.

The plaintiff in this action was a conductor upon a freight
train of the Southern Railway Company, running between
Greenville and Charlotte.   This freight train carried passen-
gers in the caboose car, and on the occasion in question a pas-
senger boarded the train at Belmont.   He did not inform
any one where he was going when he got on the train, but
when the conductor collected his fare he found that the pas-
senger desired to alight at Juneau, which is a flag station.
It was the duty of the engineer when approaching these flag
stations to blow the station signal, and then it was the duty
of the engineer to watch for a signal from the conductor as
to whether the train was to be stopped at the flag station.

There was evidence tending to show that the engineer failed to blow the station signal, and the conductor, perceiving that the engineer was not blowing the station signal, attempted to give the engineer a signal, first from the window of the caboose. Failing in this, he got on top of the freight car in front of the caboose, and then again attempted to signal the engineer, but not being able to attract his attention, the conductor attempted to go forward and turn on the air-brakes, which was a means of stopping the train. He discovered, however, that there were no air-brakes close enough for him to reach, and he started back towards the caboose car, still signaling the engineer. About this time the engineer seems to have discovered the signal, and he then stopped the train in such a way as to cause (as plaintiff alleges) an unnecessary and unusual shock, and this threw the plaintiff from the top of the box-car down between the box-car and the caboose car, and in his fall he grabbed at a brake wheel which broke with him, and he then fell between the cars and had his leg crushed to pieces, and his right hand mangled so that he lost three fingers, and sustained other severe bruises and cuts on his body.

By the uncontradicted evidence, the brake wheel in question was in a defective condition, having lost two of its spokes, and this defective condition had been reported two or three times to the car inspector, but the defendant had failed to repair the wheel.

*Tillett & Guthrie* for plaintiff.
*W. B. Rodman* for defendant.

CLARK, C. J. The Court instructed the jury: "You will understand that the plaintiff contends that there was a series of negligent acts of which the Southern Railway Company was guilty, and which resulted in the injuries which he sustained." And after enumerating these several alleged acts of negligence, the Court again says: "He contends that the series

of negligent acts complained of proximately caused the injuries which he says he received." In other words, the plaintiff took upon himself the burden of showing that each one of these acts in this series of acts was negligent.

The Court on the first and second issues charged: "If the jury find from the evidence that, as the train approached the station, Juneau, the plaintiff was sitting in the cupola of the caboose, and the conductor attempted to signal the engineer from the window of the cupola of the caboose, and failed, and then went out on the top of the caboose and crossed over to a box car to signal the engineer, and did signal the engineer to stop, then it was the duty of the engineer to stop his train at Juncau, in obedience to the order; and if the jury find from the evidence that the engineer, acting in obedience to the signal of the conductor, applied the brakes to the train in the usual and customary manner, and if the jury find from the evidence that the train was going up a grade, and the application of the brakes and the train going up the grade caused the slack to run out, and this caused a jar or jolt, which threw the conductor off of his feet, and he fell between the cars, this would not be negligence, and you will answer the first issue, 'No.' "

From the foregoing charge it is clear that the jury found that the train was not stopped by the engineer in the "usual and customary manner" and with the usual and ordinary jolts, because, under the instruction quoted above, if the jury had found that the engineer had stopped the train in the usual and ordinary manner, without negligence on his part, then the jury would have answered the first issue "No." In the light of this charge, and the verdict of the jury upon the first issue, it may be taken as a fact, which is established in this case without objection or exception, that the engineer on the occasion in question stopped the train with unusual and unnecessary shock, and that there was negligence on the part of the railway company in this respect.

On the first and second issues the Court charged the jury, further, as follows: "When a person enters into the service of a railroad company he assumes all of the ordinary risks of his employment, and when a person becomes the conductor of a freight train he assumes all the ordinary risks arising from the jolts and jars which are incident to the handling of freight trains. The Court charges you, as a matter of law, that if the jury find from the evidence that the plaintiff had signalled the engineer to stop his train, it was his (the engineer's) duty to stop his train, and the fact that the engineer proceeded to stop his train in obedience to the orders of the conductor would not be negligence, unless it was done in an extraordinary and unusual manner. The Court further charges you, as a matter of law, that if the jury find from the evidence that the conductor had signalled the engineer to stop his train, it was the duty of the conductor, who was on top of the train, to be careful, and to take such steps and do all things which a man of ordinary prudence would ordinarily do to protect himself from any shock or jar or jolt which might be expected to occur, and if he did not, then the negligence would not be that of defendant's lessee, but the negligence of the plaintiff himself, and you will answer the first issue 'No,' and the second issue, 'Yes.' "

Here again the jury were distinctly instructed that they should answer the first issue "No," unless they found that the train was stopped "in an extraordinary and unusual manner," and likewise the jury were instructed to find that the plaintiff was guilty of contributory negligence unless it was shown that he took all ordinary precautions to protect himself against any shock or jolt caused by the stopping. Under this instruction the jury have found that the plaintiff himself was not guilty of any contributory negligence in this respect.

Under the charge of the Court, as quoted above, the jury found two facts which are established in the case without objection or exception, viz: (1) That the engineer stopped

the train in a manner to cause an unusual and unnecessary shock, and (2) That the plaintiff himself was not guilty of any contributory negligence.

With these two facts established, without objection or exception, then all the other objections and exceptions become harmless to the defendant. For instance, as the jury have found that the railway company was guilty of negligence in causing the plaintiff to be thrown from the top of the box car by the unusual and unnecessary shock, and that this occurred without his negligence, then it follows that the plaintiff was entitled to recover for the damages which he sustained; and the question as to whether the brake wheel was defective, or whether that was an additional cause for his injury, was, in a sense, immaterial, because, even if the brake wheel had not been defective, the plaintiff still would have been entitled to recover what damages he sustained; and if the defendant was guilty of negligence in causing a shock which threw the plaintiff from the top of the box car, it could not save itself by showing that it was not guilty of negligence in respect to the brake wheel. For putting on plaintiff the burden of proving the brake wheel defective the defendant cannot complain. It is not necessary to consider the other exceptions, in this view of the case.

No error.

BROWN, J., dissenting: I concur with my brethren that there was evidence of negligence, upon the part of the engineer, in stopping the train while the conductor was on top of the cars, sufficient to take the case to the jury, but it being admitted by this Court that the condition of the brake wheel had nothing to do with the injury, I think that, in all fairness, a new trial should be ordered, because the Judge plainly submitted that feature of the case to the jury.

The plaintiff, conductor of a freight train, failing to signal the engineer from the caboose, to stop, went out on top of the

cars for the purpose of signalling from a place where his signals could be seen. There is evidence tending to prove that the engineer, having knowledge of the plaintiff conductor's position, was guilty of negligence in the suddenness and violence with which he applied his air brakes, whereby he threw plaintiff off the car to the ground, causing serious injury.

The plaintiff in falling struck the brake wheel with his feet and then grabbed the rim with his hands. The rod of the wheel snapped off and the plaintiff fell to the track. There was evidence tending to prove that two spokes of the wheel were out.

I understand it to be admitted by the Court, as it is undoubtedly true, that the condition of the brake wheel is not responsible, for the injury was in no way connected with it, and it was not its proximate cause. But the Court seems to regard it harmless error that his Honor submitted that feature of the case to the jury. I cannot concur in that view. It was extremely prejudicial error.

The negligence of the engineer was disputed. There is evidence tending to prove that he obeyed the plaintiff's orders to stop the freight train as well as it could be done. The defective condition of the brake wheel was placed before the jury repeatedly by the Judge, who gave it a very prominent place in stating plaintiff's contentions, and it was so argued by counsel for plaintiff to the jury. The defendant properly asked the Court to instruct the jury that there is no evidence that the injury was caused by the defective brake wheel appliance. This prayer should have been given. In the complaint and in the evidence the defective brake wheel is made a distinct ground for recovery.

Instead of giving the instruction the Court charged the jury as follows: "The defendant does not deny that the plaintiff fell from the top of the car, on which he was standing immediately before falling, but it contends that he was

not thrown from the train at all, or if he was thrown from the train, that the jar or shock which threw him was not an unusual or unnecessary jolt, jar or shock. It does not deny that the plaintiff caught the brake wheel and broke it in falling, but it denies that the brake wheel was defective, and denies that the Southern Railway Company knew or should have known anything about its being defective. It contends, further, that the brake wheel was intended as a means of applying the brakes to the caboose, and was not intended as a protection to employees of the Southern Railway Company in discharging duties required of them on top of the train."

The whole charge shows that the jury might well have been misled by the manifest opinion of the Judge, pervading the whole trial, that the defective brake wheel constituted actionable negligence and was the proximate cause of plaintiff's injury, as alleged in the complaint.

It is impossible to tell whether the jury found the first issue for plaintiff upon the ground that the engineer was negligent in stopping the train, or because of the condition of the brake wheel. Of course, it is well known that brake wheels are not intended to catch two hundred pound men when falling. When plaintiff fell on it his weight snapped it off at the rod, and it would have snapped off just as it did even if every spoke had been in its place in the wheel.

I understand my brethren to admit that, if there be no negligence found except as to the absent spokes in the brake wheel, the plaintiff could not recover. The Judge and counsel for plaintiff, during the whole trial, evidently took the contrary view and regarded such defect as actionable negligence.

It will be seen, also, by reading the record, that the defendant objected repeatedly to the evidence in regard to the condition of the brake wheel as irrelevant, incompetent and pre-

149—28

judicial, and that the admission of it is excepted to and assigned as error.

The jury were evidently misled plainly to defendant's prejudice, and I think there should be a new trial for receiving incompetent evidence and for refusing the instruction asked.